# DEPARTMENT OF PROFESSIONAL REGULATION, etc. v CLARK, et al.

### Case No. 83-2575

State of Florida, Division of Administrative Hearings

January 14, 1986

## APPEARANCES OF COUNSEL

**James Gillis,** Division of Real Estate, for petitioner.

**John M. Hathaway** for respondents.

**Dean Bunch** for respondents.

## OPINION

STEPHEN F. DEAN, Hearing Officer.

This case was heard on September 4, 1985 in Ft. Myers, Florida by Stephen F. Dean, assigned Hearing Officer of the Division of Administrative Hearings. This case was presented on a four count administrative complaint filed by the Florida Real Estate Commission against the Respondents, alleging all were guilty of fraud, misrepresentation, etc., contrary to Section 475.25(1)(b), *Florida Statutes*. This case was first set for hearing on January 10, 1984, but was continued for two months upon Respondents' motion because collateral civil litigation was pending which might resolve the issues. It was reset for April 17, 1984 and continued until September 17, 1984 on Petitioner's motion due to conflict with Florida Real Estate Commission Board meetings. Petitioner requested it again be rescheduled because key witnesses were unavailable outside of Florida. The parties were directed to report every 30 days after September 15, 1984 on the availability of witnesses, the status of the civil trial, and settlement negotiations. On November 20, 1984 an order to show cause was entered to show cause why the case should not be dismissed because the parties had failed to report the status of the case. On December 18, 1984 counsel for Respondent reported that collateral litigation was continuing and was scheduled for trial in Spring 1985. The case was continued for 120 days. Counsel for the Petitioner was replaced upon retirement of original counsel on January 18, 1985 and the counsel for Respondent asked leave to withdraw which was granted May 22, 1985. In that order, the parties were directed to report the status of their preparations no later than June 10, 1985. On June 21, 1985, James Gillis entered an appearance as counsel for Petitioner and Petitioner requested hearing on September 4, 1985.

On July 17, 1985 the case was set for hearing for September 4, 1985 and notice provided to all the Respondents. On June 24, 1985 John M. Hathaway entered an appearance on behalf of all the Respondents.

The hearing was conducted as scheduled. James Gillis appeared for Petitioner. The Respondents did not appear and the attorney of record did not appear. The circumstances surrounding the hearing are fully set forth in the order of September 6, 1985, which is attached and made a part of this Order.

Respondents then requested an extension of time to file posthearing pleadings until September 30, 1985, which was granted. On September

17, 1985, the Respondents, through their attorney Dean Bunch, filed a Motion to Permit Respondents to Present Their Case. The Respondents' motion was denied by an order dated September 26, 1985 which is attached and made a part of this Recommended Order. ██ On October 1, 1985, the Respondents filed their Proposed Findings of Fact.

Thereafter, the Recommended Order was delayed awaiting the filing of the Petitioner's proposed findings. However, a review of the file reveals Petitioner's Proposed Findings of Fact were duly and timely filed and were overlooked. Both Petitioner's and Respondents' Proposed Findings of Fact have been read and a ruling has been made on each proposed finding of fact in the Appendix to this Recommended Order.

## ISSUES

### Factual Issues

Did the Respondent Noel Clark make false representations to the buyers?

Did the Respondent Joseph Trainor make false representations to the buyers?

Did the Respondent Patricia Ann Clark make false representations to the Buyers?

Was there an obligation for the Respondents to report the rental of the property to the owners?

Did the Respondents, Noel Clark, Patricia Ann Clark and Caloosa Management fail to report the rental of property to the owners?

Did the Respondent Noel Clark fail to give the buyers the disclosure form?

### Legal Issues

Is a broker vicariously liable for misrepresentations made by an employee, under Section 475.25(1)(b), *Florida Statutes*?

Is the failure to report a rental to an owner a violation of Section 475.25(1)(b), *Florida Statutes*?

Is the failure to give a buyer a disclosure statement a violation of Section 475.25(1)(b), *Florida Statutes*?

## FINDINGS OF FACT

1. Respondent, Noel D. Clark, Jr., is now, and was at all relevant times in this cause a licensed real estate salesman, having been issued license number 0354231. The last license issued was as a salesman, c/o Caloosa Management Corporation, 88 Main Street, La Belle, Florida 33935. (PX-11, 2)

2. Respondent, Joseph A. Trainor, was at the time of the alleged transactions a licensed real estate salesman, having been issued license number 0394637. The last license issued was as a salesman, c/o Caloosa Management Corporation, 88 Main Street, La Belle, Florida 33935 (PX-11, 3)

3. Respondent, Patricia Ann Clark, is now and was at all relevant times in this cause a licensed real estate broker, having been issued license number 0360831. The last license issued was as a broker, c/o Caloosa Management Corporation, 88 Main Street, La Belle, Florida 33935. (PX-11, 4)

4. Respondent, Caloosa Management Corporation ("Caloosa"), is now and was at all relevant times in this cause a corporation licensed as a real estate broker, having been issued license number 0219744, c/o Route 3, Box 153-C, La Belle, Florida 33953. (PX-11, 5)

5. On or about October 14, 1982, Respondent, Noel D. Clark, Jr., proceeded to show Willard W. Davis and Ruth A. Davis ("DAVIS") certain residential property located at 4027 School Circle, Port La Belle, Florida, which property is owned by Reuben Meadows, and who had listed said property for rent with Respondents. (PX-11, 8)

6. It is undisputed that Noel D. Clark, Jr. acted as a real estate salesman, and an employee of Caloosa Management Corporation with respect to the rental of this home.

7. In route to said rental property, a discussion took place between DAVIS and Respondent Noel Clark concerning certain residential property that was for sale; such property located at 4011 Rockaway Drive, Port La Belle, Florida. (PX-5, page 7, et seq.)

8. Respondent Clark informed DAVIS at that time that the residential property for sale on Rockaway Drive was owned by Joseph Trainor. (PX-6, page 7, lines 11-17)

9. The fact that Joseph Trainor was the owner of said property was confirmed the next day, October 15, when DAVIS visited the house on Rockaway Drive a second time. This fact was understood by DAVIS. (PX-6, page 7, lines 2-8)

10. It is clear that DAVIS was interested in purchasing the house on Rockaway Drive due to the fact that they visited the house of their own free will on October 14 and 15. The first visit was for approximately 25 minutes. (PX-6, page 6, line 19) The second visit was for approximately 30 minutes. (PX-6, page 7, line 23)

11. Notwithstanding DAVIS' interest in purchasing the house on Rockaway Drive, DAVIS rented the house on School Circle on October 14, 1982. With respect to this rental, DAVIS tendered $780.00 to Respondents, calculated as $600.00 for two months rent of $300.00 per month, $175.00 as a security deposit, and $5.00 key deposit. (PX-11, 9). The DAVISES stayed in the house two days. (PX-5, pg. 5)

12. A Lease Agreement for Deed (PX-3) was introduced, signed by all the parties, dated October 18, 1982, which DAVIS identified as the agreement they signed.

13. The Sales Contract (PX-2) of October 15, 1982 was introduced. This contract does not contain the legal description of the property and is not signed by either Mr. or Mrs. Davis. There is no evidence this contract was signed and became effective.

14. Respondent Joseph Trainor entered into a sales contract on July 15, 1982 with Francis A. and Joan M. Bain who reside in Michigan to purchase the property on Rockaway Drive which was listed with Caloosa. Under the sales contract, Trainor took the property in "as is" condition for $33,900.00, whereupon the Bains took back a purchase money mortgage in the amount of $10,000.00 (PX-10) No evidence was introduced which would indicate when the closing of this property took place; however, the contract indicates Trainor could record his deed from the Bains when he desired. Therefore, the record title holder of said property would have been Francis and Joan Bain until Trainor elected to record the deed.[1]

15. On or about October 18, 1982, DAVIS entered into a Lease Agreement for Deed for the same property located at 4011 Rockaway Drive, Port La Belle, Florida.

16. Mrs. Davis, prior to signing such Lease Agreement for Deed, was aware that Joseph Trainor was the owner of such property. This fact was conveyed to her on October 14, 1982 by Noel D. Clark, Jr., and was confirmed the next day by Trainor. (Px-6, page 7, lines 11-17) Mr. Davis was advised by Clark that Trainor was the owner, but Mr. Davis felt Clark was the actual owner. (PX-5, page 9-10)

---

[1] It is possible that this method was used to retain a favorable mortgage to the Bains because Trainor was to pay the first mortgage in trust. See paragraph 1 of Contract. (PX-10)

17. The Lease Agreement for Deed relating to this transaction lists Joseph Trainor as the party of the first part. (PX-3) This agreement was read and understood by DAVIS prior to signing the Lease Agreement for Deed. (PX-6, pages 14-15, lines 24-25, 1-3; PX-5, page 13, lines 3-6)

18. Part of the down payment on the purchase of the Rockaway Drive residence consisted of $220.00 and $780.00 paid for the rental of the School Circle property. (PX-11, No. 13) This was refunded in full by Noel Clark to the DAVISES.

19. As further down payment on the purchase of the Rockaway Drive residence, DAVIS paid an additional $4,000.00. This amount along with the previous $1,000.00 deposit brought DAVIS' total to $5,000.00. This is consistent with the terms of the signed Lease Agreement for Deed. (PX-3, 11, 15)

20. DAVIS was initially informed that their monthly payments would be $425.00, give or take a couple of dollars. (PX-6, page 18, lines 12-17) Prior to signing the Lease Agreement for Deed, DAVIS was informed that the interest payments would be $479.16. (PX-6, page 18, lines 12-17) DAVIS questioned Respondents about this inconsistency. Respondents replied that they had made a mistake in their calculation. (PX-6, page 18, line 1; PX-5, page 12, lines 19-22)

21. DAVIS accepted this explanation and signed the Lease Agreement for Deed, notwithstanding such mistake in calculation by Respondents. (PX-5, page 12, lines 23-24; PX-6, page 18, lines 2-11) To the extent that the original representation was in error, the evidence indicates it was not material to the DAVISES who signed the agreement fully understanding the terms.

22. The $4,000.00 deposit, as well as the $1,000.00 previously paid, was received by Respondents and held in their trust account.[2]

23. The Lease Agreement for Deed provides that when DAVIS made all payments, the final payment of which is due December 15, 1987, Joseph Trainor would convey and assure to DAVIS a good and sufficient deed to said property. (PX-3) The agreement contains no provision and there was no understanding by the parties that the Agreement for Deed would be recorded. (PX-3)[3]

---

[2] The bald assertion in the response to the request for admission that this was for convenience and not a brokered transaction is not deemed admissible evidence.

[3] The bald assertions in the response to the request for admissions that Trainor dealt in this transaction as a private individual is not deemed admissible evidence.

24. On October 18, 1982, State-Wide Abstract and Land Services collected from DAVIS closing costs in the amount of $302.00, calculated as $5.00 land fees, $279.00 documentary stamps on the deed, and $18.00 miscellaneous. (PX-4) These closing costs are listed on a closing statement dated October 18, 1982. (PX-4) There is no evidence that any of the Respondents received any of this money.

25. The fact that DAVIS paid such closing costs is consistent with the signed Lease Agreement for Deed which provides that DAVIS will pay $5,000.00 down payment plus closing costs. (PX-3)

26. DAVIS understood the deed would not be conveyed until December 15, 1987. (PX-5, page 15, lines 4-6) It was impossible for Trainor to record the deed and affix the documentary tax stamps on the deed until December 15, 1987. There is no evidence of a prohibition against collection of such costs at the time of closing.

27. The Lease Agreement for Deed provided that the selling price of the house was $62,000.00, plus $500.00 for furniture, for a total of $62,500.00. (PX-3)

28. No evidence exists that Respondents represented the "fair market value" of the property to be $62,000.00. There is no requirement that property be sold at its "fair market value." The DAVISES made no effort to establish local market values and their deposition indicates they had not had their house appraised. Its current value, given an intervening fire, is conjectural. (PX-6) Their deposition also indicates their opinion as to its value (PX-9) was based upon the comments of DPR employees, which are rejected as self-serving hearsay. The evidence of the price paid by Trainor does not reflect the value of the house because Trainor caused extensive repairs to be made to the house. (See paragraphs 35, 36 and 37 below.) No evidence of the value of the property was introduced into evidence.

29. DAVIS agreed to pay all taxes and assessments on said property (PX-3) as a term of the agreement. DAVIS read and understood their obligations under the Lease Agreement for Deed relating to their payment of the 1982 real property taxes. (PX-5, page 21, lines 19-23; PX-6, page 19, lines 3-9)

30. Assuming that the Respondent Noel Clark represented to DAVIS that they would be liable to pay 1982 property taxes, this was consistent with the agreement.

31. Respondents did not provide DAVIS with a real property sales disclosure form prior to DAVIS entering into the sales contract. (PX-11, 16F) No evidence was introduced of any rule requiring a disclosure

214

statement be provided to the buyer. The Petitioner did not request official notice of such a rule.

32. There is an inconsistency in the testimony of the DAVISES as to whether or not Joseph Trainor ever represented that he had a free and clear title to the property and that there was no existing mortgage on the property. Respondents deny such allegations. (PX-11, 16(B)) Mrs. Davis says that Trainor did not represent this, but that Noel Clark did. (PX-6, page 18, lines 23-25) Mr. Davis says that Trainor and Clark participated in a conversation with him and his wife and were told that there were no mortgages nor taxes due on the property. Mr. Davis does not say who made what representation. (PX-5, page 21)

33. Even if one assumes a representation was made regarding the title, the status of the title was not material because Trainor was not required to present clear title to the property to DAVIS until December 15, 1987, under the terms of the Lease Agreement for Deed. Further, Mr. Davis felt Clark, not Trainor, was the owner. See Paragraph 16 above.

34. The DAVISES stated that Respondents represented that the house contained 1800 square feet of living space. This was denied by Respondents. (PX-11, 16(M)) The DAVISES' opinion on how much living space the house has is based upon what DAVIS was told by an employee of DPR who took measurements. This is self-serving, uncorroborated hearsay upon which a finding cannot be based. DAVIS was uncertain whether the measurement given him included or excluded the bathrooms or the garage. (PX-5, page 23, lines 3-6) No evidence was introduced which conclusively proves the dimensions of the house.

35. Noel Clark represented the house was in good repair. The house in question at the time of the sale was being remodeled. The DAVISES observed this on each of their two visits. (PX-5, page 11) Substantial repairs had already been completed, some were in process, and more work was to be done. (PX-5, page 11, lines 20-25) The condition of the house was clear to DAVIS.

36. DAVIS was informed the work would continue even after they bought the property. (PX-5, page 11, line 25; PX-6, page 8, lines 22-24) DAVIS purchased the house based on the representation that repairs (plumbing, carpeting, clearing, etc.) would continue after they moved into the house.

37. No evidence was introduced to indicate such repairs were not completed subsequent to DAVIS occupying the house.

38. When Noel Clark showed the house to DAVIS, he advised

**215**

DAVIS that the value of the property could double or triple in value in five years. (PX-9, 2) No evidence was introduced that the property could not or had not increased in value in five years. Further, the record reflects a fire occurred after the DAVISES moved in and the future value of the house may be affected by this as well as how the DAVISES keep up the house.

39. The Respondents are alleged to have failed to advise the owners of the house on School Circle of its rental by the DAVISES. Caloosa managed the property for the out-of-state owners, the Meadowses. The management contract was not introduced. There is no evidence of any obligation by the Respondents to notify the owners of the house's rental. Further, Petitioner's Exhibit 8 is the only evidence presented to show that Respondents failed to notify the owners. Petitioner's Exhibit 8 is a letter to DPR in response to a DPR letter to the owners about the transaction. This is self-serving hearsay which is uncorroborated and upon which a finding cannot be based.

40. Respondent, Patricia Ann Clark, was never present at any meetings nor involved in any negotiations among the parties. (PX-5, page 21, lines 15-18; PX-6, page 17, lines 16-21)

## CONCLUSIONS OF LAW

The Department of Administrative Hearings has jurisdiction to hear this case and enter this Recommended Order pursuant to Section 120.57(1), *Florida Statutes*. The Department of Professional Regulation charged Respondents, Noel Clark, Joseph Trainor, Patricia Ann Clark and Caloosa Management Corporation, with violating subsection 475.25(1)(b), *Florida Statutes*. Section 475.25(1)(b) provides:

(1) The commission may deny an application for licensure, registration, or permit, or renewal thereof; may suspend a license or permit for a period not exceeding 10 years; may revoke a license or permit; may impose an administrative fine not to exceed $1,000.00 for each count or separate offense; and may issue a reprimand, or any or all of the following, if it finds that the licensee, permittee, or applicant:

. . . . . . . . . . .

(b) Has been guilty of fraud, misrepresentation, false promises, false pretense, dishonest dealing by trick, scheme or device, culpable negligence, or breach of trust in any business transaction in this state or any other state, nation, or territory; has violated a duty imposed upon him by law or by the terms of a listing contract, written, oral, express, or implied in a real estate transaction; has aided, assisted, or conspired with any other person engaged in any such misconduct and in furtherance of such intent, design or scheme. . .

216

No witnesses were presented by Petitioner at hearing. Petitioner introduced, without objection, ten items into evidence at the hearing, including the depositions of the DAVISES and the Respondents' answer to the Administrative Complaint. Due to the fact that no witnesses were present at the hearing, the credibility of the witnesses cannot be tested.

Caloosa, a corporate broker, stands in the broker's shoes and is deemed guilty of anything of which Patricia Ann Clark is found guilty. If Patricia Ann Clark is guilty of violating Section 475.25(1)(b), she must be guilty by virtue of culpable negligence or some vicarious liability. Gross negligence was not proven with regard to Patricia Ann Clark. Fraud and culpable negligence require specific intent. Fraud, misrepresentations and other charges in the complaint are allegations which must be pled and proven specifically. *Department of Professional Regulation v. Copenhaver*, 5 F.A.L.r. 10830A, at 1086A (Construction Industry Licensing Board 1983) Case law suggests that in order to be guilty of false pretenses and dishonest dealings, a licensee must evince an intent to violate the law. *Bouchelle v. Fla. Real Estate Commission*, 188 So.2d 60 (Fla. 1st DCA 1966). With regard to Patricia Ann Clark, there is evidence that she *never* participated in any part of this transaction. The required intent was not proven with regard to Patricia Ann Clark. Neither Patricia Ann Clark or Caloosa were proven to violate Section 475.25(1)(b), *Florida Statutes.*

It is clear that Joseph Trainor participated in the transaction as the owner of the property in question. Noel Clark participated as a real estate salesman. Both Trainor and Clark were licensed salesmen with Caloosa and the money received from DAVIS was deposited to Caloosa's account. This raises the presumption that this was a regulated transaction and no evidence was presented of the validity of the rule allegedly requiring a disclosure form to be made available to the buyers. DPR did not request official notice of this rule. The DPR failed to prove the obligation alleged to have been breached by failing to prove the rule, an essential element of proving the alleged violation.

No evidence was introduced on the value or size of the house to show the representations by Respondents Noel Clark and Joseph Trainor were false.

The evidence was conflicting about who made the representations about the title; however, the status of the title was not a significant issue with the buyers who did not have any title work done. Mr. Davis testified he thought Clark really owned the property, notwithstanding what he had been told. The title was not at issue legally until Trainor

was required to provide a warranty deed. No evidence was presented that Trainor could not do this. Evidence was presented that shows Trainor had a contract to buy the property from the Bains and could record the deed as he desired. The allegation regarding misrepresenting the title is not proven.

Although unclear, DPR alleges the Respondents improperly retained monies paid for documentary stamps at closing. The warranty deed would not be conveyed under the terms of the Lease Agreement for Deed until December 1987. Trainor could collect at closing any recording fees that he would incur t a later date. DAVIS agreed to pay these closing costs, along with all property taxes. These charges were disclosed to the DAVISES before they signed the agreement. There is no evidence the funds were disbursed to Seller. There was not misrepresentation.

No evidence was introduced to prove an obligation by Respondents to advise the owners of the rental property of the property's rental. There was no admissible evidence that they failed to notify the owners of the rental.

### RECOMMENDATION

The Department of Professional Regulation has failed to prove one or more of the essential elements in each of the allegations against the Respondents.

Therefore, it is recommended that the Administrative Complaint be dismissed.

DONE AND ORDERED this 14th day of January 1986 in Tallahassee, Leon County, Florida.